708 A.2d 439

MARION ALFORD AND MARY FRANCES GIGLIO, INDIVIDUAL-LY, PLAINTIFFS–APPELLANTS, v. BOARD OF EDUCATION OF THE BUENA REGIONAL SCHOOL DISTRICT, DEFEN-DANT–RESPONDENT.

BOARD OF EDUCATION OF THE BUENA REGIONAL SCHOOL DISTRICT, PLAINTIFF–RESPONDENT, v. MARIANNE SOOY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 7, 1998—Decided April 22, 1998.

148

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Waltman, Reilly & Rogovoy,* attorneys for appellants Marion Alford and Mary Frances Giglio in A–4965–96T3, and appellant Marianne Sooy in A–5090–96T3 (*Ned P. Rogovoy,* on the briefs).

*Capizola, Fineman & Lapham,* attorneys for respondent in A–4965–96T3 and A–5090–96T1 (*Michael D. Capizola,* on the briefs).

The opinion of the court was delivered by

CARCHMAN, J.S.C, (temporarily assigned).

These two appeals, which were consolidated for purposes of this opinion, require us to address the issue of whether, pursuant to *N.J.S.A.* 18A:28–6.1, teachers "received" by a new school district as a result of the discontinuance of school activities by a "sending" district are entitled to reimbursement for unused sick time consistent with the same benefit received by the teachers in the "receiving" district. In both cases, the trial judges determined the answer in the negative and denied such benefits. Subsequent to the trial court decisions in these cases, we decided *In re Arbitration Between Bd. of Educ. of Buena Reg. School Dist. v. Buena Reg. Educ. Assoc.,* 300 *N.J.Super.* 415, 693 *A.*2d 159 (App.Div.),

*certif. denied,* 151 *N.J.* 466, 700 *A.*2d 879 (1997) (*In re Arbitration* ). We conclude that extending our holding in *In re Arbitration* to the facts of this case entitles the teachers to such benefits and, accordingly, we reverse.

The underlying facts in both appeals are not in dispute. The Board of Education of the Buena Regional School District (BRSD) is a regional school district comprised of the Borough of Buena and Buena Vista Township in Atlantic County. In December 1992, BRSD entered into a Sending/Receiving Agreement (S/R Agreement) with the Borough of Newfield School District (Newfield), by which, beginning in September 1993, Newfield effectively closed its schools and sent its kindergarten through sixth grade students to BRSD. The S/R Agreement specifically provided in Paragraph 5 that the receiving district (BRSD) would provide the sending district's (Newfield) tenured teachers with the benefits mandated by *N.J.S.A.* 18A:28–6.1. Paragraph 5 states:

> All such transferred teaching staff will receive compensation and benefits based on the Receiving District's contractual agreements, effective July 1, 1993.

Ten tenured Newfield teachers were reassigned to BRSD pursuant to the regionalization S/R Agreement and began teaching in the BRSD in September 1993. All three appellants, Marion Alford, Mary Frances Giglio and Marianne Sooy, were among the tenured teachers reassigned to BRSD by the December 1992 S/R Agreement. All three had previously taught in Newfield for over twenty years each.

The Buena Regional Collective Bargaining Agreement (Collective Bargaining Agreement) had been in effect prior to the execution date of the S/R Agreement and was renewed on July 1, 1993, after the September, 1993 S/R Agreement effective date. Article IX of the renewed Collective Bargaining Agreement provides for reimbursement of unused sick leave for certain teachers:

> 9.1 – **Sick Leave.** Each employee shall be entitled to 10 cumulative days per school year for sick leave under *N.J.S.A.* 18A:30–1 et seq.
>
> 9.2 – **Reimbursement.**
>
> 9.2.1. – *After 15 years of continuous service with this district, an employee who ceases his employment for any reason (except termination for just cause by the*

*Board), shall be entitled to payment for unused sick leave accumulated during employment in this school district according to the formula below. Sick leave accumulated with and/or carried over from other school districts shall not be eligible for payment.*

9.2.2 – The words "continuous service" shall mean employment by this school district for 15 or more successive full school years (a full school year shall mean 90 days or more of employment during an academic year); continuity shall not be interrupted by approved leaves of absence or by military service, but such leaves and military service shall not be counted toward achieving the 15 full years required.

9.2.3 – The payment shall be calculated by use of the following formula: 25% X current annual salary X 1/200 X accumulated sick days. For 12–month employees, the fraction shall be 1/240 instead of 1/200. "Current annual salary" shall mean the annual salary in effect for employee on employee's last day of teaching after 90 teaching days during the last academic year with this school district. *Accumulated sick days shall not exceed 10 days per year as currently provided by law, notwithstanding any future increase in sick days granted by law. Accumulated sick days shall be calculated as the unused sick days which accumulated after 90 teaching days during the last academic year of employment.* Notification to Board for payment must be given by February 1 of the year prior to ceasing employment. If no notification is given the teacher will collect the following year. Employee may choose to receive payment in two installments across tax years. If the employee dies before payment, the money will go to the estate.

[Emphasis added][1]

Alford, Giglio and Sooy claim that they are entitled to sick-leave reimbursement benefits under the BRDS Collective Bargaining Agreement.

### *Alford and Giglio*

On January 3, 1996, Alford wrote a letter to BRSD tendering her resignation as of July 1, 1996 and requesting payment for unused sick leave. Alford had accumulated 58 1/2 days of sick

---

[1] Prior to the 1992 S/R Agreement, the Newfield contract contained a similar provision which also provided for reimbursement of unused sick leave. The Newfield contract stated, in relevant part:

Upon termination of a teacher's employment either for retirement on a retirement pension or after 20 years of service in the Newfield district, the Board will pay the teacher 50% of the per diem rate for a substitute teacher per day for each unused day of cumulative sick leave up to a maximum of $1,500.00.

Neither party claims any rights under this provision.

leave in Newfield and, after teaching in BRSD for three years, she ended at her retirement with a total of 49 1/2 days of accumulated sick leave.

On January 22, 1996, Giglio wrote to BRSD tendering her resignation as of July 1, 1996 and requesting payment for her unused sick days. Giglio had accumulated 104 sick days in Newfield and, after teaching in BRSD for three years, she ended at her retirement with a total of 121 days of accumulated sick leave.

Upon retirement, both Alford and Giglio requested compensation for their unused sick leave, computed in accordance with section 9.2.3 of the Collective Bargaining Agreement.

In response to Alford's and Giglio's requests, BRSD's attorney informed them that, pursuant to the provisions of the Collective Bargaining Agreement, they were not eligible for reimbursement of their unused sick days. On June 15, 1996, Alford and Giglio filed a formal grievance with the Superintendent of BRSD. This grievance was denied on July 9, 1996.

Article V of the Collective Bargaining Agreement provides for a grievance procedure to settle disputes relating to a "violation, misinterpretation or inequitable application" of the agreement. Pursuant to the Collective Bargaining Agreement, a party dissatisfied with the decision of BRSD must file a demand for arbitration within 15 days of learning of BRSD's decision in order to qualify for arbitration. Section 5.8.2 of Article V states:

> 5.8.2 – The demand for arbitration shall be deemed a waiver by employee and the [Buena Education] Association of the right to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award. The filing of a reply by [BRSD] shall be deemed a similar waiver.

Failure to file for arbitration within this time period constitutes acceptance of BRSD's decision under section 5.3.1 of Article V:

> 5.3.1 – Failure of the Administration or [BRSD] at any step of this procedure to communicate a decision on a grievance within the specified time limits shall permit the employee to proceed to the next step. *Failure at any step of this procedure of*

*an employee to appeal a grievance to the next step within the specified time limits shall be deemed to be acceptance of the decision rendered at this step.*
[Emphasis added]

On July 29, 1996, twenty days after learning of BRSD's denial of their request for reimbursement for unused sick days, Alford and Giglio informed BRSD that they would not be demanding arbitration of their grievance. Instead, despite the language of the Collective Bargaining Agreement binding an employee to the decision of BRSD if the employee does not file for arbitration within 15 days, on September 17, 1996, Alford and Giglio filed a Complaint against BRSD in the Superior Court of New Jersey, Law Division, Special Civil Part, Atlantic County. The Complaint sought payment for unused sick leave accumulated by Alford and Giglio while employed by the Newfield and BRSD. On October 16, 1996, BRSD filed an Answer denying Alford and Giglio's right to compensation and seeking dismissal of the Complaint.

On cross-motions for summary judgment, the Law Division judge dismissed plaintiffs' complaint concluding that under the terms of the Collective Bargaining Agreement, Alford and Giglio were not entitled to carry forward any sick time for reimbursement. He concluded that under the terms of the Collective Bargaining Agreement, sick leave accumulated in another district was not eligible for payment. The motion judge also concluded that because they had invoked the grievance procedure, Alford and Giglio were procedurally barred from bringing an action in a judicial forum.

### Sooy

On April 24, 1994, Sooy notified BRSD of her intent to retire, effective July 1, 1994. Sooy had accumulated 53 days of unused sick leave in Newfield and, after teaching in BRSD, she ended at her retirement with a total of 55 1/2 days of accumulated sick leave. On July 22, 1994, BRSD issued a check to Sooy in the amount of $3,468.75, thereby reimbursing her for all unused sick time accumulated during her 27 year teaching career including her sick time accumulated in Newfield. BRSD argues that the issu-

ance of this check was inadvertent and erroneous and, upon realizing this claimed error, BRSD demanded return of this check from Sooy or reimbursement of the check's amount. Sooy did not return the funds or the check. On September 30, 1994, BRSD filed an action in the Superior Court, Special Civil Part, Gloucester County, in an attempt to recover the check. Even though the Sooy action was filed two years before Alford and Giglio's action, the latter action was decided first. Thereafter, BRSD moved for summary judgment relying on the Law Division's decision in *Marion Alford and Mary Frances Giglio v. The Board of Education of the Buena Regional School District.* The trial judge granted BRSD's Motion for Summary Judgment entering judgment against Sooy and concluding that she was not entitled to any reimbursement for accumulated sick leave. Alford, Giglio and Sooy appeal.

The resolution of the issues here requires an analysis and harmonizing of *N.J.S.A.* 18A:28-6.1, the S/R Agreement and the Collective Bargaining Agreement. The relevant portion of the statute provides:

> Whenever, heretofore or hereafter, any board of education in any school district in this state shall discontinue any high school, junior high school, elementary school or any one or more of the grades from kindergarten through grade 12 in the district and shall, by agreement with another board of education, send the pupils in such schools or grades to such other district, all teaching staff members who are assigned for a majority of their time in such school, grade or grades and who have tenure of office at the time such schools or grades are discontinued shall be employed by the board of education of such other district in the same or nearest equivalent position; ... *Teaching staff members so employed in such other district shall have their rights to tenure, seniority, pension and accumulated leave of absence, accorded under the laws of this state, recognized and preserved by the board of education of that district.* Any periods of prior employment in such sending district shall count toward the acquisition of tenure in the other district to the same extent as if all such prior employment had been in such other district.
>
> [*N.J.S.A.* 18A:28-6.1 (emphasis added)]

The statute ensures that teachers who are involuntarily transferred and "adopted" by one school board from another are not treated as "orphans in their new home." *In re Arbitration, supra,* 300 *N.J.Super.* at 419, 693 *A.2d* 159. *In re the Closing of Jamesburg High School,* 83 *N.J.* 540, 558, 416 *A.2d* 896 (Chief

Justice Wilentz, dissenting on an issue not here before us) ("[The statute] prevents local boards from neutralizing the vested rights of the tenured teachers by agreement.").

To implement the receiving and sending arrangement, both the BRSD and Newfield entered into the S/R Agreement. The impact of the agreement on the rights of the transferred teachers is clearly expressed in Paragraph 5 of the agreement which provides:

5. This agreement shall be subject to all applicable laws and regulations of the State of New Jersey. In particular, all Sending District's teaching staff members who have tenure as of June 30, 1993 will be employed by Receiving District as required by *N.J.S.A.* 18A:38 [sic]–6.1.[2] *All such transferred teaching staff will receive compensation and benefits based on the Receiving District's contractual agreements effective July 1, 1993.*

[Emphasis added]

As previously discussed the limitation on reimbursement for unused sick time was incorporated in the Collective Bargaining Agreement as applying to teachers who have fifteen years of continuous service "with this district."

We do not disagree with BRSD's position, and the conclusion of the Law Division, that reimbursement for unused sick time is a matter which is not preempted by statute and may be negotiated by the parties as a term and condition of employment. *Ramapo–Indian Hills Educ. Ass'n v. Ramapo Indian Hills Bd. of Educ.*, 176 *N.J.Super.* 35, 42, 422 *A.2d* 90 (1980). But simply concluding that the issue may be negotiated does not end the inquiry as to whether the Newfield teachers are entitled to the same benefit and consideration as the BRSD teachers. The S/R Agreement, Collective Bargaining Agreement and statute must be read in *pari materia*. We consider *In re Arbitration* to be a significant factor in this analysis.

*In re Arbitration* involved the BRSD and the Buena Education Association, the same 1992 S/R Agreement and the Collective Bargaining Agreement. In addition to the unused sick leave

---

[2] The statutory reference was an obvious typographical error and should properly refer to *N.J.S.A.* 18A:28–6.1.

compensation at issue in the present matter, the Collective Bargaining Agreement also included a multi-step salary guide under which teachers were compensated in accordance with their years of service. The ten tenured teachers who had transferred from Newfield were given full credit for their service in Newfield in determining their compensation under this salary guide. *In re Arbitration, supra,* 300 *N.J.Super.* at 418, 693 *A.*2d 159.

The Collective Bargaining Agreement also contained a "longevity" provision, which provided:

> Employees shall receive an additional increment of $300.00 for 15 years, $600.00 for 20 years, $325.00 for 25 years, $325.00 for 30 years to be added to their salary at the completion of the fifteenth, twentieth, twenty-fifth and thirtieth *years of service in the Buena Regional School District.* During the 1994–95 and following school years, the amounts shall be $300.00 for 15 years, $700.00 for 20 years, $325.00 for 25 years and $325.00 for 30 years.
>
> [*Id.* at 418–19, 693 *A.*2d 159 (emphasis added).]

Although BRSD recognized the transferred teachers' service in Newfield for other purposes, it decided that only service in the BRSD would be counted in determining eligibility for additional compensation under this provision. *Id.* at 419, 693 *A.*2d 159. BRSD applied this decision not only to the ten tenured teachers transferred to BRSD in 1993, but also to two upper grade teachers transferred in 1973 who had previously received such longevity payments based in part on service in Newfield. *Ibid.*

The Buena Education Association grieved this decision and the dispute was submitted to arbitration. The arbitrator ruled in favor of the Buena Education Association and found that the transferred teachers' "service in the Newfield School District shall be deemed years of service in Buena for the purpose of longevity under ... the contract." *Ibid.*

Following the arbitrator's decision, BRSD filed an action in the Law Division challenging the arbitrator's finding. The trial court ruled in favor of BRSD and vacated the arbitration award. The court found that the Collective Bargaining Agreement restricted a teacher's entitlement to "longevity compensation" is determined based *solely* on the teacher's service in the *Buena District.*

On appeal, we reversed and addressed the issue of whether the transferred teachers' seniority rights, guaranteed by *N.J.S.A.* 18A:28–6.1, included credit for their years of service in Newfield for purposes of determining their levels of compensation. We noted that "*N.J.S.A* 18A:28–6.1 does not include a definition of 'seniority rights,' and there is not legislative history which illuminates the intent of this provision." *Ibid.*[3]

We commented:

> The evident intent of *N.J.S.A.* 18A:28–6.1 was to preserve the basic employment rights of the tenured teachers in a school district which discontinues one or more schools and enters into a sending-receiving relationship with another school district. This broad legislative intent is evidenced by the fact that *N.J.S.A.* 18A:28–6.1 preserves not only the seniority rights of teachers transferred pursuant to such an agreement but also their rights to pension, accumulated leaves of absence and tenure. The value of these basic employment rights would be significantly diminished if the receiving district could deny credit for the transferred teachers' years of service in the sending district in determining their compensation.
>
> [*Id.* at 423, 693 *A.*2d 159]

While we recognize that *In re Arbitration* addresses a different "bundle" of rights, *i.e.,* salary versus sick-time, our reasoning in that case applies with equal force here. We cannot forget that the polestar is equality of treatment of transferred teachers from the sending district to the receiving district. Fundamental fairness and common sense demand that two teachers of equal seniority and service teaching side-by-side in a school district should be treated equally unless there is a clear and unequivocal demonstration of intent to treat such teachers differently. The three operative elements of this case—the statute and two agreements—mandate equality. To the extent that BRSD suggests that the

---

[3] While the legislative history is sparse, the Assembly Committee Substitute for Assembly No. 604 which was enacted into law as ch. 31 of the Laws of 1967, the source of *N.J.S.A.* 18A:28–6.1 contains the following statement attached to the bill:

> The purpose of this bill is to protect the tenure, seniority, pension and *accumulated sick leave rights* of teaching staff members employed by a school district which discontinues one or more grades and sends its students to another school district.
>
> [Emphasis added].

Collective Bargaining Agreement bargained away such rights, we disagree. Rights which are guaranteed by *N.J.S.A.* 18A:28–6.1 may not be bargained away. We must not confuse the right to negotiate the terms and conditions of the purchase of unused sick time from the right of a teacher transferred under *N.J.S.A.* 18A:28–6.1 to share in such negotiated benefit.

As we observed in *In re Arbitration:*

[W]e construe *N.J.S.A.* 18A:28–6.1 to require a school district which enters into a sending-receiving relationship with another district which has discontinued a school to treat the prior service of tenured teachers transferred pursuant to the agreement as if it had been performed in the receiving district for the purpose of determining those teachers' levels of compensation.

We extend that holding and conclude that for the purpose of determining a tenured teacher's entitlement to reimbursement for unused sick-time, the prior service of tenured teachers transferred pursuant to a S/R Agreement, shall be considered as if it had been performed in the receiving district.

The language in the Collective Bargaining Agreement precluding eligibility of such leave "accumulated with and/or carried over from other school districts" does not change the result. That language addresses voluntary transfers, not protected transfers resulting from sending and receiving agreements entered into pursuant to the statute.

Finally, we reject BRSD's argument that Alford and Giglio are barred from relief for failure to comply with the grievance procedures of the Collective Bargaining Agreement. We note the procedural relationship of the Alford and Giglio matter and the Sooy matter. BRSD paid Sooy for her unused sick time and then, claiming inadvertence and error, filed an action for recovery in the Special Civil Part in 1994. At the same time Alford and Giglio were unsuccessfully grieving the matter pursuant to the Collective Bargaining Agreement. Rather than proceed to arbitration, Alford and Giglio filed an action in the Law Division, Special Civil Part in 1996. We do not address the issue as to whether BRSD pursued the correct remedy in the Sooy matter in filing in a judicial forum, *see, e.g., Ridgefield Park Educ. Assoc. v. Ridgefield Park Bd. of Educ.,* 78 *N.J.* 144, 155, 393 *A.*2d 278 (1978) (noting

that a contract interpretation is an issue for judicial interpretation), but once it did and submitted the issue of a transferred tenured teacher's right to collect for unused sick time, we are constrained to conclude that to the extent that BRSD has waived its rights under the Collective Bargaining Agreement, it is estopped from now challenging Alford and Giglio's right to test the same issue in a judicial forum. To conclude otherwise, under the unique procedural circumstances of these two cases, would allow for inconsistent results and uncertainty as to the rights of the remaining tenured teachers implicated by this transfer. *See, e.g., Parks v. Colonial Penn Ins. Co.*, 98 *N.J.* 42, 48, 484 *A.*2d 4 (1984) (utilizing permissive joinder and consolidation to avoid inconsistent results); *Cf. Newmark v. Gimbel's Inc.*, 54 *N.J.* 585, 600–01, 258 *A.*2d 697 (1969).

The summary judgments under appeal are reversed, and the matters are remanded for entry of judgment in favor of appellants.